In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1089

HIGHER SOCIETY OF INDIANA,

*Plaintiff-Appellee,*

*v.*

TIPPECANOE COUNTY, INDIANA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 4:16-cv-00043 — **Philip P. Simon**, *Judge.*

ARGUED APRIL 20, 2017 — DECIDED JUNE 7, 2017

Before MANION and ROVNER, *Circuit Judges*, and COLEMAN,
*District Judge.**

MANION, *Circuit Judge*. The Higher Society of Indiana, a
non-profit advocating for the legalization of marijuana, wants
to hold a rally on the steps of the Tippecanoe County Court-
house in Lafayette, Indiana. Under County policy, the group

---

* The Honorable Sharon Johnson Coleman, of the United States Dis-
trict Court for the Northern District of Illinois, sitting by designation.

was required to get its event sponsored by the County Board of Commissioners before it could take place on the grounds. Since the Commissioners didn't want to sponsor Higher Society's event, the County denied the group permission. The organization successfully sought a preliminary injunction in the district court, and the County appeals. For the reasons stated below, we agree with the district court's thorough opinion that the County's policy likely violates the First Amendment. Therefore, we affirm the grant of the preliminary injunction.

## I. Background

In 1999, in response to controversy over a nativity scene on the courthouse grounds, the Tippecanoe County Board of Commissioners voted to declare the grounds a "closed forum." The Board approved a policy, still in effect today, that provides:

> Only displays and events sponsored and prepared by a department or office of county government will be allowed in the windows of the Tippecanoe County Office Building or on the grounds of the Tippecanoe County Courthouse. Said displays and events shall be scheduled through the Board of Commissioners of the County of Tippecanoe.

Under the policy, groups seeking to hold an event on the courthouse grounds must seek the Board's sponsorship. The County says that it seeks to sponsor only events that essentially echo the County's views.

After it enacted the closed forum policy, the Board passed a resolution that permitted the annual 'Round the Fountain

Art Fair to take place on the courthouse grounds.[1] Consistent with the policy, the County sponsors the fair, and County Commissioners and the maintenance department help with preparation and logistics. In recent years, the Board has also sponsored other events. One was a rally celebrating the 95th anniversary of the League of Women Voters in 2015, held just after the close of business on a weekday with about 100 people in attendance. The Fraternal Order of Police also held a sponsored event to pay respects to fallen police officers. That event took place at lunchtime on a weekday. Finally, the Board has issued a proclamation for Child Abuse Prevention and Awareness Month in 2015 and 2016, which included events held at lunchtime on a weekday each year led by the court-appointed Special Advocate and the Tippecanoe Child Abuse Prevention Council.

However, several groups ended up making use of the courthouse grounds without the County's permission. First, a group known as Eyes on Lafayette was too late to get authorization for its planned candlelight vigil against bullying. Despite being told that it would have to hold the event on the sidewalk, the group made use of the courthouse steps and

---

[1] The 'Round the Fountain Art Fair has been held in Lafayette each spring since 1973. Its website describes the fair as "an annual destination location that features up to 100 artists from around the nation, showcasing their talent and works in a variety of pieces and media." Round The Fountain Art Fair, About the Fair, http://www.roundthefountain.org/about/ (last visited May 2, 2017). It has "become known as one of the premier juried fine art fairs in the Midwest." *Id.* The 'Round the Fountain Art Fair committee purchases a piece of art each year "to continue the permanent collection exhibited in the halls of the Tippecanoe County Courthouse, which is a work of art in itself." *Id.*

more than 50 people attended. Second, about 60 people at-
tended a rally in support of Planned Parenthood that spilled
over onto the grounds during the day on a Monday in 2015.
There was also a daytime march in support of Syrian refugees
during a workday in 2015 that attracted about 70 people and
made some use of the grounds. And finally, a June 2016 rally
of the Greater Lafayette Moms in favor of Gun Sense spilled
over onto the courthouse steps despite not being sponsored.

Because of a misunderstanding involving a County offi-
cial, Higher Society also held an event on the steps during this
time. Someone apparently was under the mistaken belief that
Higher Society's event had been sponsored, and so told the
group it could hold its rally. At the event, speakers used a po-
dium located on the balcony above the courthouse door and
addressed a crowd of around 40 people. Higher Society also
hung banners from the balcony and used an amplifier until a
Commissioner asked the group to stop.

After its first rally, Higher Society sought permission from
the Board to hold a second event on the courthouse steps. The
Board declined to sponsor the event, citing the closed forum
policy and indicating that no Commissioners were interested
in referring the matter to the full Board. Higher Society then
sought a preliminary injunction in the Northern District of In-
diana, which Chief Judge Simon issued on December 19, 2016.
*Higher Society of Ind., Inc. v. Tippecanoe Cty.*, 4:16-CV-00043,
2016 WL 7367791 (N.D. Ind. Dec. 19, 2016). The County timely
appealed.

## II. Discussion

### A. Preliminary Injunction Standard

To be entitled to preliminary relief, Higher Society "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). However, this is a free speech case, and "in First Amendment cases, 'the likelihood of success on the merits will often be the determinative factor.'" *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quoting *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004)). That is because even short deprivations of First Amendment rights constitute irreparable harm, and "the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Id.* at 589–90. So "the analysis begins and ends with the likelihood of success on the merits of the [First Amendment] claim." *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013).

### B. Likelihood of Success

There are two ways that Tippecanoe County could plausibly defend the use of its policy to bar Higher Society's event from the courthouse grounds. First, it could argue that the courthouse grounds are a nonpublic forum and its speech regulations are "viewpoint-neutral and reasonable." See *Anderson v. Milwaukee Cty.*, 433 F.3d 975, 979 (7th Cir. 2006). If not that, the County could assert that its sponsored events are

government speech to which the First Amendment is inapplicable. See *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

The County has conceded—in the district court, in its brief, and at oral argument—that its policy is not viewpoint-neutral. This concession means that its policy would be unconstitutional even under the most restrictive forum analysis. Therefore, as the County acknowledged at oral argument, the only way it can win this case is if the events it sponsors on the courthouse grounds are government speech.

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Id.* at 467. Governments may speak for themselves and are not required simultaneously to express an opposing viewpoint. *Id.*; *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2246 (2015). Yet it may be difficult in many cases to draw the line between government speech and private speech. In *Summum* and *Walker*, the Supreme Court has carefully explained the proper analysis in such cases. A brief discussion of those cases will be instructive.

In *Summum*, the Court considered whether a permanent monument donated by a private party to be placed in a public park constituted government speech. A religious organization sought to erect a stone monument to be included in a display alongside several others, including the Ten Commandments and a September 11 memorial. *Summum*, 555 U.S. at 465. When the city council rejected the request, the organization sued, arguing that the city park was a traditional public forum and the denial of the monument thus violated the First Amendment. The Supreme Court disagreed, holding that

"[p]ermanent monuments displayed on public property typically represent government speech." *Id.* at 470.

The Court based its conclusion primarily on three observations. First, it noted that government entities "have long used monuments to speak to the public." *Id.* Second, monuments "commonly play an important role in defining the identity that a city projects to its own residents and to the outside world." *Id.* at 472. Third, governments exercise control over the messages presented by the monuments. *Id.* at 471–72. In general, accepted monuments are "meant to convey and have the effect of conveying a government message, and they thus constitute government speech." *Id.* at 472.

In *Walker*, the Court considered these factors and concluded that the design on a license plate is government speech, even if it is submitted by a member of the public through a state program encouraging such submissions. The Court noted that, like monuments in public parks, states have traditionally used license plates to convey a government message. *Walker*, 135 S. Ct. at 2248. Second, it observed that "a person who displays a message on a Texas license plate likely intends to convey to the public that the State has endorsed the message." *Id.* at 2249. And third, as in *Summum*, the government retained the final approval authority over the designs, making sure that it did not display messages with which it disagreed. *Id.*

In short, the relevant factors are: (1) whether governments have traditionally spoken to the public in the manner at issue; (2) whether observers of the speech at issue would reasonably interpret it to be that of the government; and (3) whether the government maintained editorial control over the speech. See *id.* at 2247. Contrary to *Walker* and *Summum*, all three factors

in this case indicate that events on the courthouse grounds contain private speech, not the expression of Tippecanoe County.

First, the record does not indicate any history of the courthouse grounds being used for government speech, nor is there any history of governments using events conducted by private groups to deliver their own messages. Second, unlike permanent monuments and state license plates, reasonable people would not attribute to the government the views expressed at protests and rallies on government property. As the district court correctly put it, "reasonable observers know that people who want to protest will find symbolic public property to do it on, and that, in many cases, the First Amendment guarantees them the right to march peacefully and make speeches there, even if the government doesn't like what they are saying." *Higher Society*, 2016 WL 7367791, at *5.[2] Finally, the County maintains no editorial control of individual speakers (or individual pieces of art at the 'Round the Fountain Art Fair) at each event. Presumably, an individual speaker or artist could express her views on any topic, and the County may not share those views. Without such control, it is hard for the County to maintain that the private speakers are really the County's alter ego.[3]

---

[2] For example, were Higher Society permitted to hold its event on the grounds, we seriously doubt that reasonable citizens of Lafayette will believe, solely based on the rally's location, that their County government has endorsed marijuana legalization.

[3] Our decision in *Illinois Dunesland Society v. Illinois Department of Natural Resources*, 584 F.3d 719 (7th Cir. 2009), is not to the contrary. In that case, we held that a state park did not have to display pamphlets intended to criticize the park or scare people away from it. The pamphlets that a

Because the events on the courthouse grounds are private speech, Tippecanoe County's policy violates the First Amendment. While a full record probably won't change the outcome on this question, at this point we hold only that Higher Society is likely to succeed on its First Amendment claim.

### C. Other Preliminary Injunction Factors

As we noted above, likelihood of success on the merits is usually the determinative factor when a preliminary injunction is sought on First Amendment grounds. That is true here. Therefore, we hold that the district court did not abuse its discretion when it issued the preliminary injunction.

### III. Conclusion

We understand that the County is in a difficult position. It would like to open the courthouse grounds to some events that it believes add cultural or civic value to the community, yet it doesn't want to create a public forum for everything under the sun. It may still be possible for the County to accommodate some of its concerns (such as maintaining the Art Fair) while closing the grounds to Higher Society's rally and not violating the First Amendment, but the current policy will not suffice. Because the County's policy restricts private speech and it is not viewpoint-neutral, it violates the First

---

state park chooses to display are quintessential government speech. Pamphlet racks at state parks aren't traditional public fora or places where one would expect to see messages not endorsed by the park service. To that end, the park service controls the content of the brochures. Tippecanoe County does not do the same with the content of the speeches on its courthouse grounds.

Amendment. Higher Society was entitled to a preliminary injunction. We affirm the district court's well-reasoned opinion.

AFFIRMED.